Citation Nr: 1826262 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 06-04 506 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to an initial compensable evaluation for service-connected residuals of fracture of the left mandible, from April 25, 2004 to May 21, 2004.

2. Entitlement to service connection for a thoracolumbar spine disorder (back).

3. Entitlement to service connection for a cervical spine disorder (neck).

4. Entitlement to service connection for a right knee disorder.

5. Entitlement to service connection for a left knee disorder.


REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, Attorney



WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

M. L. Marcum, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1966 to May 1968. This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a December 2004 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania. Jurisdiction of the claims file was subsequently transferred to the RO in Cleveland, Ohio.

In a January 2010 decision, the Board denied the Veteran's claim seeking entitlement to an initial compensable evaluation for service-connected residuals of fracture of the left mandible, effective May 21, 2004. The Veteran did not file a notice of appeal with the Court of Appeals for Veterans Claims (Court). As such this decision became final on the issue of entitlement to an initial compensable evaluation for service-connected residuals of fracture of the left mandible from May 21, 2004. See 38 C.F.R. § 20.1100 (2017). 

In a September 2011 decision, the Board remanded the claim of entitlement to an effective date for the award of service connection for the residuals of a left mandible fracture, earlier than May 21, 2004, the original date of claim. See Manlincon v. West, 12 Vet. App. 238 (1999). 

In an October 2011 rating decision, RO found that the Veteran's November 2005 notice of disagreement with the May 21, 2004 effective date had provided a date, time, and name of the VA employee with whom the Veteran filed his informal claim, and that the actual paperwork of the informal claim was likely misfiled or lost. 

Resolving the benefit of the doubt in the Veteran's favor, the RO granted an earlier effective date of April 25, 2004, for the award of service connection. 

In December 2011, the Veteran filed a notice of disagreement with the October 2011 rating decision. However, the Veteran did not contest the earlier effective date assigned by the RO. Rather, the Veteran challenged the initial noncompensable (0 percent) disability rating assigned to his service-connected residuals of a left mandible fracture.

As previously noted, the January 2010 Board decision is final. The Veteran has not indicated that he wished to pursue a new increased rating claim for his service-connected residuals of fracture of the left mandible from May 21, 2004. He has not submitted any new evidence in support of such claim and he failed to report for a VA oral/dental examination in October 2015. 

As such, the issue before the Board is whether the Veteran is entitled to a compensable disability rating for his service-connected residuals of fracture of the left mandible from April 25, 2004 to May 21, 2004.

The issues of entitlement to service connection for (1) a thoracolumbar spine disorder, (2) a cervical spine disorder, (3) a right knee disorder, and (4) a left knee disorder are addressed in the REMAND portion of the decision below.

FINDING OF FACT

From April 25, 2004 to May 21, 2004, residuals of a fracture of the left mandible include normal inter-incisal range of motion; no bone loss of the mandible, maxilla, or hard palate; no functional impairment due to loss of motion and masticatory function; no loss of function due to pain; nonunion and severe malunion are not shown.

CONCLUSION OF LAW

The criteria for an initial compensable evaluation for residuals of a fracture of the left mandible have not been met. 38 U.S.C.A. §§1155, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.10, 4.14, 4.20, 4.149, Diagnostic Codes 9903, 9904, 9905 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2017). The Rating Schedule is primarily a guide in the evaluation of a disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2017). Separate diagnostic codes identify the various disabilities. 

Each disability is viewed in relation to its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Staged ratings may be assigned when the factual findings show distinct time periods during the appeal period where the service connected disability exhibits symptoms that would warrant different ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

As a general matter, lay statements are considered to be competent evidence when describing the features or symptoms of an injury or illness. See Falzone v. Brown, 8 Vet. App. 398, 405 (1995). In Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) stated that lay evidence is competent and sufficient in certain instances related to medical matters. Specifically, the Federal Circuit commented that such instances include establishing a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Id.

A claim is denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability is resolved in favor of the claimant. 38 C.F.R. § 4.3 (2017). Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. 38 C.F.R. § 4.7 (2017). Otherwise, the lower rating will be assigned. Id. 

From April 25, 2004 to May 21, 2004, the Veteran's service-connected residuals of a left mandibular fracture are currently evaluated as 0 percent disabling pursuant to 38 C.F.R. § 4.150, Diagnostic Code 9904 (2017). Under this code, malunion of the mandible warrants a noncompensable evaluation with slight displacement, a10 percent rating for moderate displacement, and a 20 percent rating is warranted for severe displacement. Id. A note under this code specifically provides that the rating is dependent on the degree of motion and relative loss of masticatory function. The words "slight," "moderate" and "severe" as used in the various Diagnostic Codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence for "equitable and just decisions." 38 C.F.R. § 4.6.

Diagnostic Code 9903 provides a 10 percent evaluation for moderate nonunion of the mandible, and a 30 percent evaluation for severe nonunion. 38 C.F.R. § 4.150.

Loss of temporomandibular articulation is evaluated under Diagnostic Code 9905, which provides a 10 percent evaluation for inter-incisal range of 31 to 40 millimeters. A 20 percent evaluation requires inter-incisal range limited to 21- 30 millimeters. A 30 percent evaluation requires inter-incisal range limited to 11 to 20 millimeters. A 40 percent evaluation requires inter-incisal range limited to 0 to 10 millimeters. 38 C.F.R. § 4.150.

Having reviewed the evidence pertaining to the Veteran's disability, the Board has concluded that a compensable evaluation is not warranted at any time between April 25, 2004 and May 21, 2004. In order to warrant a compensable evaluation, the evidence must show, at a minimum, that there is moderate displacement of the mandible. The Veteran was not evaluated for this disability until June 2006. During the June 2006 VA examination, the VA examiner VA examination the examiner noted that there was only slight displacement. There are no medical records available from April 25, 2004 to May 21, 2004 indicating that the Veteran's mandible displacement was "moderate" in nature. Further, the Board notes that there is no evidence of loss of the mandible and no loss of the maxilla or hard palate during this portion of the appeal period. Indeed, when the Veteran was examined in June 2006, the VA examination report noted that there was no bone loss. Moreover, there is no evidence of functional impairment due to loss of motion and masticatory function loss during the appeal period from April 25, 2004 to May 21, 2004. 

In this regard, the Board notes that while the Veteran reported experiencing pain related to his left mandibular fracture throughout the appeal period, he denied that the pain interfered with his ability to move his jaw when he was examined in June 2006. In fact, he indicated to the examiner that his pain subsides later in the day. Finally, when the Veteran was examined in June 2006, inter-incisal range of motion was noted to be normal. The evidence also showed that there was no nonunion. 

Based on a longitudinal review of the record, the Board finds that the evidence does not demonstrate an absence of loss of motion or masticatory function that would support a higher evaluation between April 25, 2004 and May 21, 2004. Admittedly, there are no medical records available during this portion of the appeal period. However, the Board finds it highly unlikely that the Veteran's service-connected residuals of a left mandibular fracture were worse during the appeal period from April 25, 2004 to May 21, 2004, and then better when he was examined in June 2006. 

Over the past decade, the Veteran has suggested that his service-connected residuals of a left mandibular fracture should be rated 10 percent disabling. However, when the Board issued its January 2010 Board decision, it found that a noncompensable (0 percent) disability evaluation was appropriate from May 21, 2004. This was based primarily on the fact that the Veteran had a diagnosed disability with no compensable symptoms. Unfortunately, the Board finds that the evidence of record does not establish that the Veteran's symptomatology warrants a compensable disability rating during the appeal period from April 25, 2004 to May 21, 2004. As such, the Veteran's claim must be denied.

The Board notes that the Veteran has not raised any other issues, nor have any other issues been raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366 (2017)(confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of records). 

All potentially applicable Diagnostic Codes have been considered. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). The preponderance of the evidence is against an initial compensable disability rating for the Veteran's service connected bilateral hearing loss disability. As such, the benefit-of-the-doubt doctrine is inapplicable. 38 C.F.R. § 4.3. 

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board... to search the record and address procedural arguments when the Veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

ORDER

From April 25, 2004 to May 21, 2004, an initial compensable evaluation for service-connected residuals of fracture of the left mandible is denied. 

REMAND

In its September 2011 decision, the Board denied the claims of entitlement to service connection for a thoracolumbar spine disorder, cervical spine disorder, a right knee disorder, and a left knee disorder. Pursuant to Bryant v. Shinseki, 23 Vet. App. 488 (2010), in September 2013, the Veteran elected to vacate the portion of the September 2011 Board decision that denied those claims. This action was carried out in a separate decision and had no bearing on the remand portion of the September 2011 decision. In May 2014, the Board remanded these claims for additional development. 

The RO scheduled the Veteran for VA neck, back, and knee examinations in June 2016. The Veteran failed to report for those examinations and did not provide a good cause reason for his absence. 

In June 2016, the RO obtained a statement from the VA examiner who would have conducted those examinations. In particular, the examiner provided a medical opinion stating, "I am unable to provide the requested opinions without examining the Veteran, and since the Vet[eran] has failed to report for exams in two occasions, I am unable to answer the [Board of Veterans' Appeals] remand questions.

While VA has a statutory duty to assist the Veteran in developing evidence pertinent to a claim, the Veteran also has a duty to assist and cooperate with VA in developing evidence; the duty to assist is not a one-way street. See Hayes v. Brown, 5 Vet. App. 60, 68 (1993) (VA's duty to assist is not a one-way street; if a veteran wishes help, he cannot passively wait for it in those circumstances where his/her own actions are essential in obtaining the putative evidence). 

The Veteran's failure to report for the examinations has frustrated the Board's efforts to obtain additional evidence with which to decide the claims. Moreover, neither the Veteran nor his representative provided good cause for the Veteran's failure to report for the examinations. 

Generally, when a claimant fails to report for an examination scheduled in conjunction with an original compensation claim, the claim shall be based on the evidence of record. 38 C.F.R. §§ 3.655(b). However, as noted by the Veteran's representative in a March 2018 statement, the Board's May 2014 remand directives instructed the examiner to provide a medical opinion based on the evidence in the Veteran's electronic claims file. 

The Board did not explicitly instruct the examiner to conduct an in-person evaluation, and the examiner failed to explain why he was unable to provide a medical opinion without an in-person VA examination.

Under these circumstances, the Board finds that there has not been substantial compliance with its May 2014 remand. See Stegall v. West, 11 Vet. App. 268 (1998). Therefore, the RO must obtain a supplemental medical opinion that complies with the Board's May 2014 remand instructions.

Accordingly, the case is REMANDED for the following actions:

1. Refer the Veteran's electronic claims file to the August 2007 VA examiner, or, if that examiner is unavailable, to another suitably qualified VA examiner for a clarifying opinion as to the nature and etiology of the claimed thoracolumbar and cervical spine disorders. The examiner should review all pertinent records associated with the electronic claims file, including the Veteran's service treatment notes, post-service medical records, and lay statements. 

An explanation for all opinions expressed must be provided. If an opinion cannot be provided without resort to speculation, it must be noted in the opinion report, and an explanation should be provided for that conclusion. 

The examiner must provide an opinion regarding whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's current thoracolumbar and cervical spine disorders manifested in service or were otherwise causally or etiologically related to his military service, including two in-service motor vehicle accidents. The examiner must address the Veteran's service treatment notes, the Veteran's competent lay statements of continuous back pain since service, private treatment notes, and the July 2011 private medical opinion that the Veteran's thoracolumbar and cervical spine disorders were directly caused by a 1966 motor vehicle accident during service. 

2. Refer the Veteran's electronic claims file to the August 2007 VA examiner, or, if that examiner is unavailable, to another suitably qualified VA examiner for a clarifying opinion as to the nature and etiology of the claimed bilateral knee disorder. The examiner should review all pertinent records associated with the claims file, including the Veteran's service treatment notes, post-service medical records, and lay statements. 

An explanation for all opinions expressed must be provided. If an opinion cannot be provided without resort to speculation, it must be noted in the opinion report, and an explanation should be provided for that conclusion. 

The examiner must provide an opinion regarding whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's current bilateral knee disorder manifested in service or were otherwise causally or etiologically related to his military service, including two in-service motor vehicle accidents. The examiner must address the Veteran's service treatment notes, the Veteran's competent lay statements of continuous knee pain since service, private treatment notes, and the July 2011 private medical opinion that the Veteran's bilateral knee disorder was directly caused by a 1966 motor vehicle accident during service. 

3. After completing the above actions, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claims must be readjudicated. If the claims remain denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


JOHN J. CROWLEY
Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs